Good morning. We have four argued cases this morning. The first is number 17, 1193 Nestle USA, Inc. v. Steuben Foods, Inc. This is Karen. Since the second case involves the same counsel, I suggest we just keep the same places at the table rather than switching, okay? May it please the Court. Virginia Carroll on behalf of appellant Nestle USA. The central issue in this appeal has been before this Court before, and that is the construction and scope of the term aseptic and aseptically disinfecting as found in the patent at issue in this appeal as well as the patent that was at issue before, the 013 patent in this Court's matter 2016-17-50. The Court, that decision, the decision of the Court came out after Nestle's blue brief, but before the other two briefs, and was addressed in both of those briefs. That decision reversed the Board's finding, the Board's claim construction of aseptic, and affirmatively entered a claim construction that aseptic in that patent, which has the same specification and file history as to the term aseptic and aseptically disinfecting, that aseptic is based on the lexicography in the patent defined as the FDA level of aseptic. The Court went further in looking at the scope of the claim term and confined the FDA level of aseptic to FDA regulations related to aseptic packaging. It specifically considered argument that the FDA level of aseptic included the FDA's hydrogen peroxide residual restriction and determined that it did not. It found that only the regulations that were aseptic were included in the FDA level of aseptic, not regulations that applied to food products that were not aseptic. The Court's analysis and its ruling that the residual is not a finding of fact, it is a matter of claim construction that this Court has already resolved. The Court considered specifically the claims and found that based on claim differentiation, the patentee had clearly, when it wished to claim the hydrogen peroxide residual requirement, it did so specifically. When it did not, it did not. Thus, that supported its finding that the hydrogen peroxide residual was not part of the definition of aseptic. What collateral stop will affect, if any, does our prior ruling have on this? Your Honor, because it is a different patent, although a related patent, and the specification and the file history are the same, we would assert that your findings, your ruling of claim construction in that proceeding is binding on this proceeding. Unless there is error or new evidence or some other basis to revisit that claim construction, we do not believe that that has been asserted or shown in this case. One of the claim terms is different, I think. One is the same, aseptic, and the other one is aseptically disinfecting, which I think, if I recall correctly, was not a claim term that was at issue in the earlier appeal. Well, it was at issue in the earlier appeal in the sense that the Court, I mean, the Board and the Court looked at the word aseptic. Right, I understand that, but that particular terminology was not at issue in the earlier appeal. Is it suggested here that the term aseptic and aseptically disinfecting could have different meanings? No, Your Honor. In fact, nobody has challenged this Court's construction that aseptic means FDA level of the aseptic or that the FDA level of the aseptic means the FDA standards that relate to aseptic packaging. Well, I'm not sure that's true. Your opposing counsel seems to think that the earlier decision was wrong. Well, opposing counsel has asserted that the hydrogen peroxide residual is an aseptic standard, is an aseptic regulation, but opposing counsel, based on the briefs, has not challenged this Court's construction of aseptic, except for it has asserted that the Court should not have concluded that the hydrogen peroxide residual does not meet its construction. But it hasn't challenged the underlying construction, at least based on the briefs before this Court. The assertion is that this Court shouldn't have found that, as I understand it, opposing counsel asserts that this Court should not have concluded that the residual requirement is not an aseptic standard. That is, they assert that it is an aseptic standard. But the Court went through that analysis and made that claim construction affirmatively by looking at the claims, based on claim differentiation, by looking at... Well, is that really a claim construction issue? I mean, I tend to agree with you that they're not challenging the claim construction that aseptic means FDA standards of aseptic, but whether or not the regulation itself, the residual regulation, 21-1005, I think, is an aseptic standard or not, is that really a claim construction issue, or is that our interpretation of what 1005 is for? Your Honor, it is claim construction. It was necessary to reach the conclusion in this case, but the Board aptly asserted that it met the definition of a standard that should be applied... What if we just got it wrong, and 1005 actually is the only point of the residual regulation is the use of hydrogen peroxide in aseptic systems and sterilization? Would it then be an aseptic regulation under our construction? If Your Honor concluded that the regulation... After looking at the specification, the file history, and the regulation... This is where I'm a little confused by your argument. Now, I don't think it... I'm not sure it really matters much, because I'm not sure that we got it wrong, but I don't know why it's a claim construction issue of what the regulation is. The claim construction is what they mean the term aseptic processing to be, or aseptic. We said that means FDA regulations relating to it. Then we have to look to FDA regulations and put them in certain boxes, but that's not claim construction. That's construing what regulations are for. Why isn't 1005 just used for aseptic processing? Your question has two parts, as I understand it. The first is, why isn't it really claim construction, or is it? Why don't you just get past that? You're kind of wasting your time with me. My point is, if you read 1005 in its entirety, doesn't it lead you to the conclusion that it actually is... The whole point of that is the residuals of hydrogen peroxide when it's used as a sterilant in aseptic processing systems. No, Your Honor. It does not. Why not? Looking at the history of the regulation and the regulation itself, it clearly applies to all food processing that uses hydrogen peroxide. What's your evidence for that? Is it on the text of the regulation? The text of the regulation, but also on the legislative history of the regulation. The regulation sprung from the fact that the FDA was going to permit the use of hydrogen peroxide in food processing. It realized that exposure to hydrogen peroxide by humans could cause health and safety concerns. It needed to limit how much hydrogen peroxide could come in contact with the food product and thus be ingested by a human. It determined, based upon a number of studies and analysis, that that was a safe level of ingestion by human beings of hydrogen peroxide that would be left as a residual in the processing of the packaging material in the food and then combined and ingested. I think your friend suggests that the whole impetus for this regulation was to be used in an aseptic processing system. That's the question that the FDA was addressing. Is that incorrect? There's no evidence that that's the reason that that was the impetus for this regulation. Isn't that who asked for the regulation? An aseptic processor? That is not in the record. There's no evidence of that in the record. That has been suggested by opposing counsel, but there is nothing to suggest that in the legislative history or the records of the government that support the FDA regulation. Perhaps there was an impetus there, but it's clear and there is evidence that that standard applies to non-aseptic processing. What's that evidence? Is it that the regulation on its face doesn't confine it to aseptic processing? You say the legislative history, but you're not pointing me to anything specific. I can point you to something specific, Your Honor. The regulation on its face is not limited to aseptic processing. The only use of the word aseptic in the whole regulation is in Subsection E, which talks about the fact that if hydrogen peroxide is going to be used for aseptic processing, it must also comply with all the other subsections of that regulation, which include the maximum amount of percentage of hydrogen peroxide and the residual requirement. The application of that requirement to aseptic is provided for in E, Subsection E, as long as the remaining provisions are complied with. The remaining provisions apply to all food processing using hydrogen peroxide, not just aseptic. I guess they could hardly have intended that if you don't use aseptic processing, that you can still exceed the hydrogen peroxide level specified in the regulation. The FDA could hardly have intended that if you didn't use aseptic processing, that you could exceed the hydrogen peroxide levels. In other words, that you could poison people if you weren't using aseptic processing. Well, Your Honor, there had been an existence for a long time before aseptic processing, other types of food processing that did use hydrogen peroxide. That's the point. Why would the FDA allow you to have larger concentrations of hydrogen peroxide when you weren't using aseptic processing? Because there are instances where the use of hydrogen peroxide levels... I'm not sure how to respond. I think the point is that this is a regulation that applies to all kinds of food processing, not just aseptic processing. The FDA met one standard to apply to everything, not just for this to apply to aseptic and not to have a limitation on other food processing. I take it you would agree. Yes, Your Honor. That's right. I'm sorry. I think I misunderstood what you were saying. I apologize. Under your rebuttal, do you want to say anything? Yes, please. Mr. Fisher? Good morning. May it please the Court? I think I'll pick up where we left off here with respect to the regulatory regime here. Can I just ask you, because I find your red brief a little confusing on this point. I know that our decision came out in the midst of the briefing, but you had it there. Do you agree that in that decision we said that the hydrogen peroxide regulation is not an aseptic regulation? Yes, I agree that... If it's not an aseptic regulation, in our claim construction of these terms, it says that only FDA regulations that apply to aseptic processing are included, then the Board's claim construction here is wrong, unless you convince us that our prior decision is wrong. Well, different patent, different main term. That's a convoluted way of saying, if we apply the claim construction and the content of our prior decision, we have to vacate and remand here, too. That's not necessarily correct, Your Honor. How could that not be correct? We have a different patent here. We have a different claim term here. It's a related patent, isn't it? It's a related patent. The claim term that was construed in the 1750 appeal was aseptic. Aseptic was lexicographically defined as FDA level of aseptic. What this Court decided in the 1750 appeal is that would implicate those FDA regulations related to aseptic packaging. The claim term here... It said that this regulation about the hydrogen peroxide residuals was not one of those regulations. That's correct, and I'd like to come back to that. Isn't that binding, too? With respect, I'd like to move to... Is that binding? With respect to aseptic, perhaps. If it's correct, it would be binding. With respect to aseptic. If it's correct, it would be binding. Why is it... Yes, it's binding. Okay, it's binding. I'd like to explain why we think it's... Do you think a regulation can be not an aseptic regulation, but can be an aseptic processing regulation? No. I'm going to step back for a second and discuss the regulatory regime. Well, we said that this was not an FDA regulation related to aseptic, right? Yes, we did. If it's not an FDA regulation related to aseptic, then you lose here unless you can convince us that either we were wrong or that aseptic processing means something different than aseptic. Correct. I assume that's what you're relying on. Yes, and I would like to convince you both that you are wrong and that aseptically disinfecting can implicate different things than aseptic or aseptic product or... That would still require us to assume that the hydrogen peroxide regulation is only related to aseptic processing and not just a limitation on hydrogen peroxide residuals, wouldn't it? That's correct. That's the basis for our decision. That's correct. Is that what you're trying to get at in the regulatory history to show us that 1005 is only an aseptic processing regulation? Yes. Where in the text of the regulation does it say that? It says that. This is with respect to the preamble. Where are you reading from? I'm reading from 178.10.05. Where is it set for? Is it in the brief? It's in the... I'll just pull up the appendix here. In the appendix at 2909. I would just for a moment like to give a bit of a backdrop here. It is our understanding that in the 1750 appeal, we did not undertake a regulatory construction. We didn't go through the details of what the regulatory legislative history of this regulation was, the statutory authority for these regulations. We didn't do that level of analysis. With that level of analysis, had we done that level of analysis, I think we would have found that 178.10.05 issued out of 21 U.S.C. 348, which is a statute that says you can... You can't re-argue the prior case. No. I want to give the framework of what 178.10.05 is. Why aren't you re-arguing the prior case? I'm sorry? The prior case characterized this regulation as not limited to aseptic processing, right? That's correct. Well, so how can we depart from that? As Judge Hughes suggested, if I could convince you that that decision that it was not an aseptic regulation is wrong, which I would like to do, then we have a different result. Are we supposed to overrule the earlier case? No, I think that there can be a consistent construction both in the other case and in this case. I don't understand what you're talking about. Okay, there's a different claim term. The other case rejected your position, and now you're saying that we should disregard the earlier case. Are you asking for a different construction of aseptically sanitizing versus aseptically disinfecting? Disinfecting, sorry. Yes. Aseptically disinfecting is... That's not what the board said below, right? The board just relied on its same construction from the 1750 case. The board said that you determine which regulations apply in the context of what is being claimed. The 1750 appeal was as to aseptic. This is aseptically disinfecting. Disinfecting requires commercial sterility. I'm confused, and I'm getting confused for the same reason I was getting confused with your friend. It seems we all agree that the claim construction of these terms is any FDA regulations related to aseptic processing. Yes. Then we just look at what the regulations are. It's not a claim construction issue. It's what the regulations are. On its face is 1005, an aseptic processing regulation, and it seems to me that there's  What limits it to aseptic? It's a limitation on the use of hydrogen peroxide to sterilize food contact surfaces. Do you mean that you can only use hydrogen peroxide in aseptic processing systems? Under 1005. Sterilization... Where does it say that? Sterilization. Sterilization refers to, and it's specifically recited in subpart E of 178.10.05. Sterilization refers to commercial sterility under 21 CFR 113. 21 CFR 113 is the aseptic packaging standard for commercial sterility. We just... 174. You're asking us to change our interpretation of the regulation, whether you view that as part of the claim construction or separate from the claim construction, it was still was something that was decided in the earlier case and would appear to be binding on us in this case as a matter of collateral estoppel. No. I think it's a different patent and it's a different claim term. On a higher will, we've said the claim construction applies between related patents. You've agreed it's a related patent. It is a related patent, but the board here construed aseptically disinfecting separately from aseptic. Subsection E of 178.10.05 specifically refers to 21 CFR 113, which is the aseptic packaging. That makes sense because subsection E refers to the use, as your friend explained, of hydrogen peroxide in aseptic systems, but that doesn't deal with the rest of it, which sets levels for use of hydrogen peroxide more generally. This is a use-specific regulation. If you were to try to get approval to use hydrogen peroxide for a different use, you would have to get another regulation. That's the way these work under 21 USC 348. This preamble says, hydrogen peroxide solution identified in this section may be safely used to sterilize. Sterilize means aseptic. Sterilize means commercial sterility. The structure of this regulation is that we will define what it is, hydrogen peroxide, in A through C, define a limitation, and what use is this regulation authorizing? The use of hydrogen peroxide to sterilize packages under 21 CFR 113, which is the aseptic packaging regulation. This is an aseptic packaging regulation, and I would cite the chamber's reference, which is at appendix 2428, that states, quote, the date that section 178.10.05 went into effect, quote, will be remembered as possibly the most important date for aseptic processing in the United States. On this date, the FDA approved the restricted use of hydrogen peroxide as a packaged sterilant. That is what 178.10.05 does. 178.10.05 provides or authorizes the restricted use of hydrogen peroxide as a sterilant for aseptic packaging. And with respect, Your Honor, I believe the panel was misled in the 1750 appeal to be taken down a path that this is a statute of, or regulation of general applicability. That argument was raised for the first time after the record was closed. Why is this earlier decision not binding on us? You don't come to this court and re-argue cases. You know, it's why it's not binding is a matter of collateral estoppel. It's a different claim term, aseptically disinfecting. So how can it be consistent? Aseptic requires FDA level of aseptic. Aseptically disinfecting means you have to meet the narrow path of commercial sterility of 113. You're not arguing there's any difference between aseptic processing or aseptic disinfecting, right? I mean, there's no basis for distinguishing between those terms. It's the context of what is being claimed. What construction do you think should exist for aseptically disinfecting? The construction the board set forth here. What did the board set forth? I'm sorry? What construction did the board set forth? The board said, let me make sure I get the language right. Disinfecting the plurality of bottles in compliance with any applicable FDA regulation. As mentioned above, when hydrogen peroxide is used to sterilize food packaging material, for example, bottles, the FDA limitation on residual hydrogen peroxide is applicable. That's the same construction that the board used in the 1750 case. It's the construction we agreed with in part that it means any FDA regulation regarding aseptic processing or aseptic. It's not a different construction. You just want us, again, you want us to reconsider what 1005 is for. There was a statement in the earlier decision that because 178.1005 is a regulation of general applicability, loose language, it cannot be an FDA regulation. Right, I get it. You think we were wrong the first time around. Maybe we were wrong the first time around. I think you asked Ron Blonk the first time around. If you didn't, I'm sorry, but you certainly didn't get it. I don't see how we can get out of that on a claim construction because it's not a different claim construction. You're asking us to change our regulatory interpretation of what 1005 stands for. We did not understand that the 1750 opinion construed 178.1005 to now make it generally applicable in the food industry. Well, it certainly said that it was not a regulation directed to aseptic or aseptic processing. The claim construction you're relying on in this case from the board, as you read it to me, defines aseptic disinfecting as any FDA regulation relating to aseptic. It's the same argument. The board apparently finds this regulation to be an aseptic regulation. The prior panel did not. The prior federal circuit panel did not, yes. This is the FDA aseptic regulation, 178.1005, and now there's a statement that is inconsistent, makes the 1750 decision internally inconsistent. Are those FDA regulations governing aseptic packaging? 178.1005 governs aseptic packaging. Nestle admits it in their brief here. Subsection E is aseptic packaging, and subsection E requires the residual requirement, so they have now conceded after they got a decision in the 1750 appeal that, in fact, 178.1005 is exclusively aseptic, and you can't reconcile the position from before to now. I would just also note, with respect to the evidence, there is no evidence to say... I think we're out of time. Thank you. Thank you. Just a couple of quick points. The claim term is not different here than it was in the 1750 case. While the board and the court talked about the word aseptic, it was in the context of aseptically disinfecting. The word aseptic does not appear in the claims of the 013 patent at all. The words aseptically disinfecting didn't. Can I ask you this? I think we relied, although perhaps not extremely heavily, but on the claim differentiation argument in the 1750 case. Is there the same kind of claim differentiation issues here? Are there claims in these patents that, in addition to saying aseptically disinfecting, then add a dependent claim that puts in the hydrogen peroxide limitation? Not in this patent, Your Honor. Our position is that the claim differentiation argument still applies because the patents are related and the term has to be construed consistent across the patents. One other quick point that I wanted to make to you is that I think there's a little misunderstanding of what the board did in this appeal. The board said that aseptic disinfecting means disinfecting the plurality of bottles in compliance with any applicable FDA standard or regulation, not any applicable FDA aseptic regulation. It went on to find that the reserves will apply. My opposing counsel made the statement that Nestle has somehow conceded that 10.05 is an aseptic standard. We indeed have not. We do acknowledge the fact that the use of hydrogen peroxide must comply with that standard. It must be no greater than 35 percent. It must meet the residual requirement, but so must all use of hydrogen peroxide in food processing. If there's no further questions, I'll see the rest of my time.